IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBIN DEGNER,

                 Plaintiff,                         OPINION AND ORDER

    v.

                                                16-cv-674-wmc

JUNEAU COUNTY,

                 Defendant.

In advance of the final pretrial conference scheduled for April 9, 2018, the court issues the following opinion and order on the parties' motions in limine.

OPINION

I. **Plaintiff's Motions in Limine (dkt. ##47, 49, 51, 53, 56)**

A. **Evidence or Testimony of Plaintiff's Criminal Convictions (dkt. #47)**

Plaintiff contends that evidence and testimony related to her two criminal convictions for misdemeanor theft in a business setting of less than $2,500 should be excluded under Rules 401, 402 and 609. As for Rules 401 and 402, plaintiff argues that the criminal convictions have no relevance, since they played no role in her termination. (Pl.'s Br. (dkt. #48) 2.) As for Rule 609, plaintiff argues her convictions may not be used to impeach, since neither involved a crime "punishable by death or imprisonment for more than one year" or a situation where "establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement." (*Id*. at 2-3.) Indeed, Degner pleaded "no contest" to two counts of violating Wis. Stat. § 943.20(1)(b) -- a class A misdemeanor punishable by "a fine not to exceed $10,000 or imprisonment not to exceed

9 months, or both." (*Id*. at 3.)

In response, defendant essentially concedes the lack of relevance, except as it concerns impeachment for dishonesty. For this purpose, defendant argues that evidence of the convictions is admissible under Rule 609(b) even if the elements of the Wisconsin criminal statute did not require a dishonest act or false statement, because plaintiff's specific business theft crimes involved efforts at concealment. (Def.'s Opp'n (dkt. #80) 2-3.) Assuming this court were willing to get into the weeds of the underlying facts of criminal convictions that were never fully adjudicated -- and it is not -- the use of these generic misdemeanor "theft" offenses solely for impeachment would be far more prejudicial than probative. Accordingly, plaintiff's motion in limine is GRANTED.

## B. Testimony of Dr. James Black regarding Plaintiff's Leadership Skills or Performance (dkt. #49)

Plaintiff also seeks to exclude all evidence or testimony from Dr. James Black regarding plaintiff's leadership skills or work performance on grounds of relevance. According to the declaration of Scott Ethun, Dr. Black reported in early 2014 that he had concerns about plaintiff's leadership, but Ethun dismissed this feedback at that time. Indeed, Ethun actually discontinued *Dr. Black's* contract, feeling he was biased against plaintiff and would not help her develop as a manager. (Pl.'s Br. (dkt. #50) 1-2.) Plaintiff argues Ethun's immediate reaction to Dr. Black's opinion undermines any claim that it later affected Ethun's decision to terminate plaintiff, rendering Dr. Black's testimony irrelevant, but that is a question for the jury. Plaintiff also contends that because Dr. Black's contract was discontinued at an unspecified point in 2014, he would obviously be

unaware of the specific events leading to plaintiff's January 2016 termination.

The court largely agrees that Dr. Black's *testimony* would be of limited relevance, if any. Perhaps Black's 2014 *opinions* could have some relevance to the extent that Ethun or some other decision maker relied on them around the time of plaintiff's termination (Def.'s Opp'n (dkt. #82) 2), but that is not the subject of this motion in limine. Instead, plaintiff seeks to exclude Dr. Black testifying himself, apparently either about his conversation with Ethun or more general views as to the plaintiff's leadership skills or performance.

As to the first category, Black's testimony would only be necessary if plaintiff disputed Ethun's description of what Black told him. As to the second, Black's testimony would appear to be excluded by Fed. R. Evid. 404(a), which prohibits admission of evidence "of a person's character or trait of character . . . for the purpose of proving action and conformity therewith on a particular occasion." Defendant provides the court with no authority suggesting that this prohibition would not apply here, and the only obvious exception to this prohibition would be for habit under Rule 406 or impeachment under Rule 404(b). Since "leadership skills" or "performance" do not come close to meeting the requirements of a habit, that basis is easily rejected. *See Simplex, Inc. v. Diversified Energy Sys., Inc.* 847 F.2d 1290, 1293 (7th Cir. 1988) ("before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature"). As for impeachment, the only obvious exception would be character for honesty, but there is no suggestion that Dr. Black with be getting on the stand on that subject. Consequently, plaintiff's motion in limine is

GRANTED and Dr. Black will not be permitted to testify about his impressions of plaintiff's leadership skills or performance, unless plaintiff opens the door by disputing the accuracy of any recitation of Black's 2014 opinions admitted into evidence.

### C. Testimony of David Rung regarding Plaintiff's Leadership Skills or Performance (dkt. #51)

Plaintiff similarly argues that testimony by David Rung regarding her leadership skills or performance should be excluded under Rules 401, 402 and 403. As with Dr. Black, plaintiff asserts that Rung's testimony is irrelevant, having retired from Juneau County over two years before plaintiff was terminated. (Pl.'s Br. (dkt. #52) 2.) Plaintiff also notes that Ethun testified he felt Rung's criticism of plaintiff receiving early tenure was "a little harsh on her because she was new." (*Id*. at 3.) Plaintiff separately argues Rung's testimony would be needlessly cumulative to the extent he were allowed to testify as to interactions between plaintiffs and other employees who will be testifying about their own interactions with plaintiff.

As with Dr. Black, defendant responds that Rung's testimony is relevant to establish ongoing and escalating performance problems that led to plaintiff's termination, even if the culminating events occurred well after Rung's interactions with her. (Def.'s Opp'n (dkt. #81) 2-3.) Defendant also observes that Rung had a direct and regular working relationship with plaintiff before his retirement. (*Id*. at 3.) Finally, defendant argues that Rung, as the former holder of plaintiff's job responsibilities before her position was created, could testify that the responsibilities were not too much for one person. (*Id*. at 4.)

Again, most of defendant's response fails to address the specific thrust of plaintiff's motion, which will be granted. Absent evidence that his opinions were made known to the decision makers, that testimony appears inadmissible. As for other subjects on which Rung might testify, whether corroborating what decision-makers saw or were told or otherwise, the court will, of course, be receptive to cumulative objections to the extent that testimony from other testifying witnesses make it so. Subject to those caveats, plaintiff's motion is, therefore, GRANTED.

### D. Evidence or Testimony regarding Plaintiff's Performance or Complaints against Her after January 11, 2016 (dkt. #53)

Plaintiff further seeks to exclude all evidence or testimony related to performance issues and complaints about her that were discovered after January 11, 2016. The basis for this motion is the minutes of a Juneau County Personnel Committee meeting (dkt. #55-1) that took place on January 11, 2016, at which plaintiff contends the decision to terminate her was made. (Pl.'s Br. (dkt. #54) 1-2.) Those minutes merely reflect approval, following a closed session, of an offer of a four-week transition should an unnamed individual resign. Plaintiff asserts that the number of alleged discoveries of her performance issues after this vote are irrelevant, because they could not have affected a termination decision that had already been made. (*Id*. at 4.)

Defendant counters that this meeting only approved a severance offer in the event that Ethun chose to terminate plaintiff. (Def.'s Opp'n (dkt. #84) 2.) Defendant states the timing of the vote was because the committee met only once a month and, since Ethun was considering terminating plaintiff, he sought to ensure that severance terms were

authorized *if* he made a final decision to terminate. (*Id*. at 2-3.) Consequently, defendant maintains that Ethun's investigation of plaintiff's performance after January 11, 2016, was for the purpose of gathering information to make a final decision about whether plaintiff should be terminated. (*Id*. at 3.) Because the committee meeting notes do not *disprove* defendant's version of events, it remains an open question when the decision to terminate plaintiff was made by defendant and for what reasons. Consequently, this motion is DENIED.

### E. Evidence regarding Plaintiff's Performance or Leadership Skills from Any Witness other than Scott Ethun (dkt. #56)

In arguably inconsistent fashion, plaintiff finally argues that because Scott Ethun made the ultimate decision to terminate plaintiff, all evidence from other witnesses about plaintiff's performance and leadership skills should be excluded as irrelevant and confusing to a jury being asked to decide if Ethun's decision was motivated by plaintiff's FMLA leave. (Pl.'s Br. (dkt. #57) 1-2.) Defendant responds that others' concerns about plaintiff's performance make it more likely that plaintiff's termination was for "legitimate (rather than pretextual)" reasons. (Def.'s Opp'n (dkt. #83) 2.) Moreover, since Ethun and plaintiff did not work together directly, it was information collected from other individuals that motivated his ultimate decision. (*Id*. at 2-3.) While this case may ultimately turn on Ethun's subjective motivations for terminating plaintiff, evidence of plaintiff's actual performance (and how she was perceived as reported to Ethun) is contextual information within limits in determining why Ethun's decision was made. Within reasonable limits outlined above for Black and Rung as to timing and relevance, the court will allow some

more contemporaneous testimony as to plaintiff's performance and leadership skills *if seen by a decision-maker or relayed to Ethun or others involved in the decision-making and put in dispute by plaintiff*. Otherwise, this motion will be GRANTED.

## II. Defendant's Motions in Limine (dkt. #61)

### A. Evidence Concerning the Existence of Insurance

Defendant seeks to exclude evidence that Juneau County possessed liability insurance. Plaintiff does not dispute this motion and it is GRANTED.

### B. Testimony and Evidence Relating to the Fact that the Children's Services Manager Position was Restructured after Plaintiff resigned

Defendant seeks to exclude evidence that the Children's Services Manager position was split into two jobs after plaintiff's termination as irrelevant. (Def.'s Br. (dkt. #61) 2.) Defendant also argues that the alleged performance issues which led to plaintiff's termination were unrelated to workload, making the restructuring irrelevant to any disputed fact. (*Id*. at 3.)

Plaintiff argues the restructuring is relevant to assessing the credibility of Ethun, Kelly Firlus and Coralie Burrows. (Pl.'s Opp'n (dkt. #73) 2.) In the case of Ethun, plaintiff argues the restructuring constitutes evidence that he knew plaintiff's position was too much for one person, but still chose to terminate her based on related performance issues. (*Id*.) As for Firlus and Burrows, who proposed the restructuring, plaintiff argues they stood to gain from criticizing plaintiff's performance before her dismissal. (*Id*.) Finally, plaintiff argues that workload is a relevant factor in determining why plaintiff was terminated.

While the decision to restructure was made after plaintiff's termination, the court agrees it was close enough in time to be a basis to question Ethun as to whether plaintiff's position held too many responsibilities to judge her performance fairly, and plaintiff may argue his doing so anyway supports her assertion that performance was a subterfuge for his underlying impermissible motivations. Even if Ethun had not yet decided to restructure plaintiff's position, it is also plausible that Firlus and Burrows could have been aware that plaintiff's termination would be beneficial to their prospects for advancement, or at least plaintiff may so argue. Accordingly, this motion is DENIED.

## C. Testimony and Evidence relating to the County's Progressive Discipline Policy

Defendant further seeks exclusion of testimony and evidence related to Juneau County's progressive discipline policy because any potential failure to follow the policy is not proof of an impermissible motive for plaintiff's termination. (Def.'s Br. (dkt. #61) 4.) Curiously, defendant argues alternatively it *did* subject plaintiff to progressive discipline and communicated this fact to her, making this evidence similarly irrelevant. (*Id*. at 2-3.) Plaintiff responds that defendant's alleged failure to follow its own discipline policy is evidence that an impermissible motive may have led to her termination, particularly where the policy mandated progressive discipline. (Pl.'s Opp'n (dkt. #73) 4 - 5.)

The court will DENY this motion because: (1) defendant's failure to adhere to its own policy of progressive discipline *could* indicate performance issues were not the real motivation for termination; and (2) whether this policy was actually followed before plaintiff's use of FMLA leave is a question of fact for the jury to resolve.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion in limine (dkt. #47) to exclude evidence or testimony of plaintiff's criminal convictions is GRANTED.

2) Plaintiff's motion in limine (dkt. #49) to exclude the testimony of Dr. James Black regarding plaintiff's leadership skills or performance is GRANTED.

3) Plaintiff's motion in limine (dkt. #51) to exclude the testimony of David Rung regarding plaintiff's leadership skills or performance is GRANTED.

4) Plaintiff's motion in limine (dkt. #53) to exclude evidence or testimony regarding plaintiff's performance or complaints against her after January 11, 2016, is DENIED.

5) Plaintiff's motion in limine (dkt. #56) to exclude evidence regarding plaintiff's performance or leadership skills from any witness other than Scott Ethun is GRANTED IN PART AND DENIED IN PART as set forth above.

6) Defendant's motions in limine (dkt. #61) are GRANTED IN PART AND DENIED IN PART as follows:

   a) defendant's motion in limine # 1 to exclude evidence concerning the existence of insurance is GRANTED;

   b) defendant's motion in limine # 2 to exclude testimony and evidence relating to the fact that the children's services manager position was restructured after plaintiff resigned is DENIED;

   c) defendant's motion in limine # 3 to exclude testimony and evidence relating to the county's progressive discipline policy is DENIED.

Entered this 6th day of April, 2018.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge